JKM

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl Dean Schlobom, | No. CV 11-1753-PHX-DGC (MEA) |
| Plaintiff, | |
| vs. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

On September 6, 2011, Plaintiff Carl Dean Schlobom, who is confined in the Arizona State Prison Lewis Complex in Buckeye, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, an Application to Proceed *In Forma Pauperis*, and a Motion to Appoint Counsel. In a September 30, 2011 Order, the Court granted the Application to Proceed, denied the Motion, and dismissed the Complaint because Plaintiff failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint.

On October 11, 2011, Plaintiff filed a First Amended Complaint. On October 27, 2011, he filed a Motion for Reconsideration of Appointment of Counsel. In a November 23, 2011 Order, the Court granted the Motion for Reconsideration to the extent that the Court would request counsel to represent him *pro bono* as authorized by 28 U.S.C. § 1915(e). The Order also required counsel to file a second amended complaint within 60 days of filing a notice of appearance in this action.

**TEMPSREF**

Counsel appeared on Plaintiff's behalf on February 7, 2012.  After obtaining two extensions of time, counsel filed a Second Amended Complaint (Doc. 20) on July 9, 2012.  But on August 17, 2012, counsel moved to withdraw and requested that the Court appoint substitute counsel.  On February 25, 2013, the Court granted the motion, and on February 28, substitute counsel appeared on Plaintiff's behalf.

The Court will require Defendants Charles Ryan, Thomas Bell, Michael Adu-Tutu, and Wexford Health Sources Incorporated to answer the Second Amended Complaint and will dismiss the remaining Defendants without prejudice.

**I.      Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's

specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

## II. Second Amended Complaint

In his two-count Second Amended Complaint, Plaintiff names the following Defendants: Arizona Department of Corrections (ADC) Director Charles Ryan; Interim Division Director of ADC Health Services Richard Pratt, P.A.; former Division Director of ADC Health Services, D.D.S.; Facility Health Administrator Bruce J. McMorran; Lewis Complex Warden Tara Diaz; Doctor Thomas Michael Bell; and Wexford Health Sources, Inc. All Defendants, except Defendant Bell, are sued in their "supervisory capacities" and are referred to in the Second Amended Complaint as "Supervisory Defendants." The Second Amended Complaint also specifies that all of the Defendants, except Defendants Adu-Tutu and Wexford Health Sources, Inc., are sued only in their "official capacity." The Second Amended Complaint does not explain whether Defendants Adu-Tutu and Wexford Health Sources, Inc., are sued in their official or individual capacity.

Plaintiff alleges that when he was found alone on his prison cell floor on September 4, 2010, he was bleeding from his head and his left leg had suffered a compound fracture. He was taken to an outside hospital, where his head was stitched-up and emergency surgery was performed on his leg. Several pieces of hardware, including Dall-Miles cables, Steinmann pins, flexible reamers, locking screws, and a Stryker nail were used to repair the three major fracture fragments in his leg. Post-operative examinations revealed that he had contracted pneumonia and suffered hemorrhage and anemia due to blood loss. On September 9, 2010, he was transferred to a prison hospital in Tucson with instructions that he was to avoid any weight bearing on his leg and was to have a follow-up in two weeks to remove the surgical staples. Plaintiff alleges that he neither received physical therapy nor follow-up treatment with an orthopedic surgeon.

1  On December 28, 2010, he was released from the prison hospital and transferred to the
2  Lewis prison complex.

3  Notwithstanding a special needs order directing that he be housed on the ground
4  floor and assigned to a lower bunk, he was assigned to a top bunk on the second floor.
5  On January 2, 2011, when returning to his cell, Plaintiff fell backward down a half flight
6  of stairs and was knocked unconscious.  When medical staff were unable to contact the
7  doctor on call, they ordered Plaintiff to return to his cell and apply ice.  The only
8  treatment he received was Ibuprofen.

9  On February 5, 2011, Plaintiff was taken to an outside hospital for an appointment
10  with an orthopedic surgeon.  Two x-rays of his left leg were taken, but correctional
11  officers then returned him to prison without allowing him to attend his appointment with
12  the surgeon.  Notwithstanding his complaints of pain in his leg and that it was visibly
13  swollen and purple, Plaintiff did not see a doctor until March 24, 2001.  Doctor
14  Macabuhay, who is not named as a defendant, noted that Plaintiff suffered numbness, hot
15  tingling sensations, and shooting pain in his left leg, but prescribed only more pain
16  medication.

17  On June 6, 2011, Plaintiff saw Defendant Bell, who noted that Plaintiff's pain
18  might be the result of problems with the hardware in his leg.  Defendant Bell
19  recommended x-rays, but did not schedule them and did not order a follow-up
20  appointment with an orthopedic surgeon.

21  On June 26, 2011, Plaintiff fell in his cell and heard a snapping sound from his
22  leg. Correctional officials refused his request for medical assistance.  Plaintiff fell again
23  that evening.  An officer who saw Plaintiff fall initiated the Medical Incident Command
24  System, but was informed that medical staff would see Plaintiff the next day, so Plaintiff
25  was returned to his cell in a wheelchair.  On June 28, 2011, Plaintiff fell a third time.  He
26  was initially ordered to walk to medical, but was eventually taken in wheelchair.  At the
27  medical unit, Defendant Bell wrapped his ankle in an Ace bandage and again ordered x-
28  rays.

On July 18, 2011, Plaintiff was taken to an outside hospital for x-rays. The x-rays revealed that the hardware in his leg was bent, broken, had been displaced, and would need to be removed. The doctor at the hospital ordered that Plaintiff not have any weight bearing on his left leg and that he was to have a follow-up with an orthopedic surgeon to remove the hardware in his leg. Upon returning to prison, Plaintiff was given a special needs order for a wheelchair and a medical lay-in. He was also informed that he would see a doctor the next day to schedule surgery.

Plaintiff was not seen by a doctor and on August 2, 2011, his special needs order expired notwithstanding his requests that it be renewed. Correctional Officers Reed, Trough, and Benson, who are not named as defendants, removed Plaintiff's wheelchair. On August 3, 2011, Plaintiff again saw Defendant Bell, but he did not schedule Plaintiff for surgery.

On January 5, 2012, Plaintiff saw an orthopedic surgeon, who confirmed the prior findings and determined that the hardware needed to be removed from Plaintiff's leg. On January 12, 2012, Plaintiff was taken for surgery, but when he requested that the hardware be preserved as evidence, the surgeon refused to perform the surgery. Plaintiff alleges that his numerous subsequent requests for surgery have been rebuffed and that he has been told that Defendant Wexford Health Sources, Inc., will not schedule him for surgery.

In his first claim for relief, Plaintiff alleges that by their policies and practices, including their failure to hire adequate staff or train and supervise existing staff, the "Supervisory Defendants," acting "in their official capacities," caused him unnecessary pain and suffering and additional injury due to inadequate health care.

In his second claim for relief, Plaintiff alleges that Defendant Bell's deliberate indifference to Plaintiff's post-operative health needs, and his failure to provide treatment and therapy, caused him to suffer further serious injury and unnecessary pain and suffering.

Plaintiff seeks a declaratory judgment, preliminary and permanent injunctive relief, compensatory and punitive damages, attorneys' fees, and costs.

### III. Failure to State a Claim

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett*, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrections*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion

TERMPSREF

does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

### A.   Supervisory Defendants

To state a valid claim under § 1983, a plaintiff must allege that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no *respondeat superior* liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-92 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676

Accordingly, to the extent that Plaintiff claims the "Supervisory Defendants" failed to adequately manage and supervise healthcare providers, he has failed to state a claim. Plaintiff's claim that Defendants Pratt, McMorran, and Diaz have established an inadequate system for the provision of medical care to inmates also fails to state a claim. Plaintiff asserts only vague and conclusory claims that these three Defendants were aware of systemic deficiencies and failed to correct them. Because Plaintiff makes no specific factual allegations connecting Defendants Pratt, McMorran, and Diaz to Plaintiff's alleged injuries, they will be dismissed.

/ / /

/ / /

### B. Claim for Monetary Damages

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," which is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Eleventh Amendment bars suits for money damages against a state or state officials acting in their official capacity. *Will v Michigan Dept's of State Policy*, 491 U.S. 71 n. 10 (1989); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992). It does not, however, bar suits seeking injunctive relief or certain declaratory relief against state officers in their official capacity. *See Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1992).

A plaintiff may seek damages under § 1983 against state officials sued in their individual capacities, but Plaintiff does not seek relief against any of the Defendants in their individual capacities. Plaintiff's first claim for relief explicitly seeks relief against the "Supervisory Defendants" acting "in their official capacities." (Doc. 12 at 15.) Plaintiff's second claim for relief is asserted only against Defendant Bell, who is also sued only "in his official capacity." (Doc. 12 at 3.) Because Defendants are sued only in their official capacities, the Eleventh Amendment bars Plaintiff's claims for monetary relief.

### IV. Claims for Which an Answer Will be Required

Defendants Ryan, Adu-Tutu, and Wexford Health Resources will be required to answer the first claim for relief, and Defendant Bell will be required to answer the second claim for relief.

**IT IS ORDERED:**

(1) Plaintiff's claims for monetary damages **dismissed** without prejudice.

(2) Defendants Pratt, McMorran, and Diaz are **dismissed** without prejudice.

(3) Defendants Ryan, Adu-Tutu, and Wexford Health Resources must answer the first claim for relief and Defendant Bell must answer the second claim for relief in the Second Amended Complaint.

TERMPSREF

- 8 -

(4)     Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(5)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. FED. R. CIV. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(6)     This matter is referred to Magistrate Judge Mark E. Aspey pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 16th day of April, 2013.

_____
David G. Campbell
United States District Judge

TERMPSREF